UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

A. H.,

        Plaintiff,

v.               5:17-CV-0385
                 (WBC)
COMMISSIONER OF SOCIAL SECURITY,

        Defendant.
_____

APPEARANCES:           OF COUNSEL:

OLINSKY LAW GROUP        HOWARD D. OLINSKY, ESQ.
 Counsel for Plaintiff
300 S. State St., Ste. 420
Syracuse, NY 13202

U.S. SOCIAL SECURITY ADMIN.     LAUREN E. MYERS, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
 Counsel for Defendant
26 Federal Plaza – Room 3904
New York, NY 10278

William B. Mitchell Carter, U.S. Magistrate Judge,

## MEMORANDUM-DECISION and ORDER

This matter was referred to me, for all proceedings and entry of a final judgment, pursuant to the Social Security Pilot Program, N.D.N.Y. General Order No. 18, and in accordance with the provisions of 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, N.D.N.Y. Local Rule 73.1 and the consent of the parties. (Dkt. Nos. 4, 13.).

Currently before the Court, in this Social Security action filed by A.H. ("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are the parties' cross-motions for

judgment on the pleadings. (Dkt. Nos. 9, 10.) For the reasons set forth below, Plaintiff's motion is denied and Defendant's motion is granted.

I.   **RELEVANT BACKGROUND**

   A.   **Factual Background**

Plaintiff was born in 1966. (T. 87.) He completed the 8th grade. (T. 231.) Generally, Plaintiff's alleged disability consists of Legg Perthes disease, arthritis in the lower spine, "shrinking" discs at C4-C7, pinched nerve in neck, left arm/knee/shoulder pain, and tennis elbow. (*Id.*) His alleged disability onset date is May 1, 2010. (T. 87.) His date last insured is December 31, 2015. (*Id.*) He previously worked as an industrial cleaner and forklift operator. (T. 29.)

   B.   **Procedural History**

On September 24, 2013, Plaintiff applied for a period of Disability Insurance Benefits ("SSD") under Title II, and Supplemental Security Income ("SSI") under Title XVI, of the Social Security Act. (T. 87.) Plaintiff's applications were initially denied, after which he timely requested a hearing before an Administrative Law Judge ("the ALJ"). On June 18, 2015, Plaintiff appeared before the ALJ, Jennifer Gale Smith. (T. 37-62.) On July 23, 2015, ALJ Smith issued a written decision finding Plaintiff not disabled under the Social Security Act. (T. 17-36.) On February 9, 2017 the Appeals Council ("AC") denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (T. 1-6.) Thereafter, Plaintiff timely sought judicial review in this Court.

   C.   **The ALJ's Decision**

Generally, in her decision, the ALJ made the following five findings of fact and conclusions of law. (T. 23-31.) First, the ALJ found Plaintiff met the insured status requirements through December 31, 2015 and Plaintiff had not engaged in substantial gainful activity since September 14, 2012. (T. 23.) Second, the ALJ found Plaintiff had the severe impairments of degenerative disease of the lumbosacral spine, cervical spondylosis, bilateral epicondylitis, history of Legg-Perthes disease, anxiety, depression, and alcohol abuse. (*Id.*) Third, the ALJ found Plaintiff did not have an impairment that meets or medically equals one of the listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix. 1. (T. 24-25.) Fourth, the ALJ found Plaintiff had the residual functional capacity ("RFC") to perform:

> light work as defined in 20 CFR [§§]404.1567(b) and 416.967(b)[1] except [Plaintiff] should work at simple, routine, and repetitive tasks. [Plaintiff] should work in a low stress job defined as occasional decision making, occasional judgment required, and occasional changes in the work setting. [Plaintiff] should not climb ladders, ropes, and scaffolds, kneel, crouch, squat, balance, and crawl. [Plaintiff] can occasionally climb ramps and stairs and stoop. [Plaintiff] can occasionally push and pull with his upper and lower extremities up to the limits of light work. [Plaintiff] can frequently reach, handle, finger, and feel.

(T. 25-26.) Fifth, the ALJ determined Plaintiff was incapable of performing his past relevant work; however, there were jobs that existed in significant numbers in the national economy Plaintiff could perform. (T. 29-30.)

## II.     THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A.     Plaintiff's Arguments

---

[1]     Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time. 20 C.F.R. §§ 404.1567(b), 416.967(b).

Plaintiff makes two arguments in support of his motion for judgment on the pleadings. First, Plaintiff argues the ALJ's finding that Plaintiff was able to frequently reach, handle, finger, and feel was not supported by substantial evidence. (Dkt. No. 9 at 8-11 [Pl.'s Mem. of Law].) Second, and lastly, Plaintiff argues the ALJ's step five determination was not supported by substantial evidence. (*Id.* at 11-12.)

### B. Defendant's Arguments

In response, Defendant makes two arguments. First, Defendant argues substantial evidence supported the ALJ's RFC finding. (Dkt. No. 10 at 8-11 [Def.'s Mem. of Law].) Second, and lastly, Defendant argues substantial evidence supported the step five determination. (*Id.* at 11-13.)

## III. RELEVANT LEGAL STANDARD

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

**B.    Standard to Determine Disability**

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. *See* 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized the validity of this

sequential evaluation process. *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a 'residual functional capacity' assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014).

## IV. ANALYSIS

### A. The ALJ's RFC Determination

The RFC is an assessment of "the most [Plaintiff] can still do despite [his or her] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1)[2]. The ALJ is responsible for assessing Plaintiff's RFC based on a review of relevant medical and non-medical evidence, including any statement about what Plaintiff can still do, provided by any medical sources. *Id.* §§ 404.1527(d), 404.1545(a)(3), 404.1546(c), 416.927(d), 416.945(a)(3), 416.946(c).

Plaintiff asserts the ALJ's RFC determination regarding Plaintiff's ability to reach, handle, finger, and feel was not supported by substantial evidence in the record. (Dkt. No. 9 at 8 [Pl.'s Mem. of Law].) Plaintiff contends the ALJ erred in assessing the opinion J. Alan Lemley, M.D.; erred in concluding the record contained limited treatment

---

[2] Effective March 27, 2017, many of the Regulations cited herein have been amended, as have SSRs. Nonetheless, because Plaintiff's social security application was filed before the new Regulations and SSRs went into effect, the Court reviews the ALJ's decision under the earlier Regulations and SSRs.

6

for Plaintiff's bilateral epicondylitis during the period under review; and substantial evidence in the record supported greater manipulative limitations. (*Id.* at 8-11.)

Dr. Lemley treated Plaintiff for bilateral elbow and forearm pain due to epicondylitis. (T. 312-313.) On May 15, 2012, after a course of treatment for epicondylitis, Dr. Lemley stated Plaintiff was "greatly improved" and his grip strength had "tremendously improved." (T. 313.) He further stated Plaintiff did not have significant tenderness with elbow motion and had full range of motion. (*Id.*) Dr. Lemley stated Plaintiff "remains at LIGHT DUTY" and he "should avoid repetitive gripping and liftings activities long-term." (*Id.*)

On November 12, 2013, consultative examiner, Kalyani Ganesh, M.D., examined Plaintiff and provided a medical source statement. (T. 458-463.) On exam, Dr. Ganesh observed Plaintiff's hand and finger dexterity were intact and his grip strength was 5/5 bilaterally. (T. 460.) Dr. Ganesh opined Plaintiff had "no gross limitations to . . . the use of upper extremities." (T. 461.)

In assessing Plaintiff's manipulative limitations the ALJ reviewed the relevant medical evidence in the record. The ALJ acknowledged Dr. Lemley's statement, that Plaintiff should avoid repetitive gripping, but concluded the limitation was not supported by the evidence in the record. (T. 26.) Here, the ALJ relied on Dr. Ganesh's examination and opinion that Plaintiff had no gross manipulative limitations. (*Id.*) The ALJ further noted an examination which contained complaints of numbness and tingling in Plaintiff's left arm to the fingertips and over the right arm to the elbow; however, the ALJ noted objective testing which showed Plaintiff's handgrip to be equal and

7

symmetric. (*Id.*)  Lastly, the ALJ noted the record contained "very little treatment" for bilateral epicondylitis during the relevant time period under review. (*Id.*)

Here, the ALJ properly assessed Plaintiff's manipulative limitations. Although Dr. Lemley's opinion was provided a few months before Plaintiff's alleged onset date, the ALJ did not reject the opinion for being outside the period of review. Here, the ALJ considered Dr. Lemley's opinion and ultimately determined it was not supported by evidence in the record, including Dr. Ganesh's examination and statement. *See Mongeur v. Heckler*, 722 F.2d 1033, 1039 (2d Cir. 1983) ("The opinion of a treating physician is not binding if it is contradicted by substantial evidence, and a consulting physician report may constitute such evidence."). The Regulations "recognize that the Commissioner's consultants are highly trained physicians with expertise in evaluation of medical issues in disability claims who's "opinions may constitute substantial evidence in support of residual functional capacity findings." *Lewis v. Colvin*, 122 F. Supp. 3d 1, at 7 (N.D.N.Y. 2015) (citing *Delgrosso v. Colvin,* 2015 WL 3915944, at *4 (N.D.N.Y. June 25, 2015); *see also Heagney-O'Hara v. Comm'r of Soc. Sec.,* 646 F. App'x 123, 126 (2d Cir. 2016); *Monette v. Colvin,* 654 F. App'x 516 (2d Cir. 2016); *Snyder v. Colvin,* 667 F. App'x 319 (2d Cir. 2016).

The ALJ also properly concluded Plaintiff received little treatment for his epicondylitis during the period under review. (T. 26.) Indeed, the record contains no treatment for epicondylitis after his May 2012 visit to Dr. Lemley. In May 2012, Dr. Lemley's stated Plaintiff's elbows "have stabilized and he is not having any significant discomfort at this time." (T. 312.) The notation also indicated Plaintiff was working at that time doing lawn care. (*Id.*) Dr. Lemley noted Plaintiff would follow up as needed.

(T. 313.) The May 2012 notation from Dr. Lemley is the last notion from him in the record. After May 2012 Plaintiff continued to receive care from various providers with Dr. Lemley's practice, but for other conditions. (T. 308.) In September of 2013, a year after Plaintiff's alleged onset date, Plaintiff sought treatment for neck pain that radiated to his left arm and hand. (T. 433.) An examination at that time revealed Plaintiff's hand grip, wrist extension and flexion, arm/shoulder abduction, elbow extension and flexion were equal and symmetric. (T. 435.) Plaintiff saw Dr. Ganesh in November of 2013 and Plaintiff had full range of motion and strength in his upper extremities. (T. 460.) A physical examination conducted in 2014 described Plaintiff's upper extremities as having "full range of motion, smooth, and without limitations." (T. 480.) Although Plaintiff complained of numbness and tingling in his arms, he had equal and symmetric hand grip, wrist extension and flexion, arm/shoulder abduction, and elbow extension and flexion. (*Id.*) An examination in 2015 noted Plaintiff's extremities had full range of motion. (T. 500.)

Plaintiff asserts the ALJ found Plaintiff's epicondylitis to be a severe impairment at step two and therefore she must believe the impairment caused some degree of limitation to Plaintiff's ability to work. (Dkt. No. 9 at 10 [Pl.'s Mem. of Law].) However, the ALJ did find limitations. Although Dr. Ganesh opined Plaintiff had no manipulative limitations, the ALJ accounted for any limitations imposed by Plaintiff's epicondylitis by limiting Plaintiff to frequent reaching, handling, fingering and feeling. (T. 26.) Frequent means an activity occurs from one-third to two-thirds of the time. DOT, App'x C. Constantly means an activity occurs two-thirds or more of the time. *Id.* Plaintiff asserts frequent reaching handling, fingering and feeling is "clearly more than Plaintiff would be

9

able to do, as proven by the record"; however, under the substantial evidence standard of review, it is not enough for Plaintiff to merely disagree with the ALJ's weighing of the evidence or to argue that the evidence in the record could support her position. Plaintiff must show that no reasonable factfinder could have reached the ALJ's conclusions based on the evidence in record. *See Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); *see also Wojciechowski v. Colvin,* 967 F.Supp.2d 602, 605 (N.D.N.Y. 2013) (Commissioner's findings must be sustained if supported by substantial evidence even if substantial evidence supported the plaintiff's position); *see also Jones v. Sullivan,* 949 F.2d 57, 59 (2d Cir.1991) (reviewing courts must afford the Commissioner's determination considerable deference and cannot substitute own judgment even if it might justifiably have reached a different result upon a *de novo* review). Plaintiff provides no evidence that Dr. Lemley's limitation to avoid "repetitive" manipulation was more restrictive than the ALJ's limitation to "frequent" manipulation. Further, as stated herein, the ALJ properly discounted Dr. Lemley's opinion and substantial evidence in the record supported the ALJ's RFC determination of frequent manipulation.

Here, the ALJ properly assessed Dr. Lemley's statement regarding Plaintiff's ability to use his upper extremities. The ALJ ultimately determined his opinion was inconsistent with the evidence in the record, including the examination and opinion of Dr. Ganesh. During the period in review Plaintiff did not seek treatment for his epicondylitis and objective examinations during the period in review were essentially normal. Therefore, the ALJ provided good reasons for not adopting Dr. Lemley's

opinion and the manipulative limitations provided in the RFC were supported by substantial evidence in the record including Dr. Ganesh's opinion.

### B. The ALJ's Step Five Determination

Plaintiff first argues that the hypothetical question posed to the vocational expert ("VE"), the answer to which was used to support the step five finding, was incomplete because it did not contain the greater manipulative restrictions. (Dkt. No. 9 at 11-12 [Pl. Mem. of Law].) This argument is merely repetitive of Plaintiff previous arguments and is unpersuasive since this Court has already concluded that the ALJ did not err in her RFC determination that Plaintiff could perform frequent manipulation.

Plaintiff next asserts the ALJ did not include in the hypothetical to the VE a limitation that appropriately considered Plaintiff's mental health impairments. (Dkt. No. 9 at 11-12 [Pl.'s Mem. of Law.] Specifically, Plaintiff asserts the hypothetical posed to the VE did not accurately account for Plaintiff's moderate difficulties in concentration, persistence, or pace. (Id.)

At step two the ALJ determined Plaintiff had severe mental impairments. (T. 23.) The ALJ concluded, based on the opinion of consultative examiner, Rebecca Fisher, Psy.D. and Plaintiff's subjective reports, Plaintiff had "no more than moderate difficulties" maintaining concentration, persistence, and pace. (T. 24.)

In formulating Plaintiff's mental RFC at step four, the ALJ afforded significant weight to Dr. Fisher's opinion. (T. 28.) Dr. Fisher opined Plaintiff did not appear to have any limitations in his ability to follow and understand simple directions and instructions, perform simple tasks independently, maintain attention and concertation, maintain a regular schedule, and relate adequately with others. (T. 454-455.) She further opined

Plaintiff had a mild limitation in his ability to learn new tasks and perform complex tasks independently and a moderate limitation in his ability to make appropriate decisions and appropriately deal with stress. (T. 455.)

During the hearing, the ALJ posed a hypothetical to the VE which accurately mirrored her mental RFC determination. (Compare T. 56 and T. 25.) The VE then provided occupations that a person with Plaintiff's vocational profile and RFC could perform. (T. 56-58.)

Plaintiff's assertion that the hypothetical to the VE was inaccurate because it did not contain moderate limitations in concentration, persistence, or pace is inaccurate. First, an assessment of limitations and restrictions from mental impairment at steps two and three are not an RFC assessment. *See* SSR 96-8p, 1996 WL 374184, at *4. Second, the Second Circuit has held that an ALJ's failure to incorporate non-exertional limitations in a hypothetical is harmless error if the medical evidence demonstrates that a plaintiff can engage in simple, routine tasks or unskilled work despite limitations in concentration, persistence, and pace and the hypothetical is limited to include only unskilled work or the hypothetical otherwise implicitly accounted for a plaintiff's limitations in concentration, persistence, and pace. *McIntyre v. Colvin*, 758 F.3d 146, 152 (2d Cir. 2014) (internal citation omitted). Here, substantial evidence in the record demonstrated that Plaintiff could engage in simple, routine, low stress work and the ALJ explicitly limited the hypothetical to such tasks. Therefore, any error to specifically account for moderate limitations in concentration, persistence, and pace was harmless.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 9) is

**DENIED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 10) is

**GRANTED**; and it is further

**ORDERED** that Defendant's unfavorable determination is **AFFIRMED**; and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**.

Dated: July 9, 2018

William B. Mitchell Carter
U.S. Magistrate Judge